UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY ROMANO,

        Plaintiff,

v.

C.O. R. BROWN, *et al.*,

        Defendants.

1:18-CV-00302-JLS-MJR

REPORT AND RECOMMENDATION

---

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr., for all pre-trial matters, including hearing and reporting on dispositive motions. (Dkt. No. 24) Before the Court is defendant Robert Brown's motion to dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. (Dkt. No. 65) For the following reasons, the Court recommends that the motion be granted and that the amended complaint be dismissed without prejudice.

## BACKGROUND and PROCEDURAL HISTORY

Plaintiff, Anthony Romano, is a *pro se* litigant the Court is very familiar with.[1] He is currently confined at Mid-State Correctional Facility. (Dkt. No. 69) On October 29, 2020, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of

---

[1] In this District alone, plaintiff has filed at least 13 cases since 2013; four that remain pending.

his Eighth Amendment rights while incarcerated at Five Points Correctional Facility.[2] (Dkt. No. 21) Specially, plaintiff claims that defendant Robert Brown, a corrections officer at Five Points, used excessive force against him on April 19, 2017.[3] (*Id.* at pgs. 4, 23)

The Court entered a Case Management Order on October 7, 2021, which set forth discovery and motion deadlines. (Dkt. No. 33) On May 23, 2022, defendant requested an extension of time to complete discovery. (Dkt. No. 39) The Court granted the request, extending the fact discovery deadline to June 23, 2022. (Dkt. No. 40)

On May 23, 2022, defendant issued a notice to take plaintiff's deposition, through video conferencing, at the facility where plaintiff was incarcerated. (Dkt. No. 41; Dkt. No. 65-2, ¶ 7) When defense counsel attempted to proceed with the deposition, as scheduled, on June 22, 2022, plaintiff indicated that he was not feeling well and was unable to proceed. (Dkt. No. 65-2, ¶ 8; Exh. A) The parties mutually agreed to adjourn the deposition and to seek a thirty-day extension of the discovery deadline, which was later granted by the Court. (Dkt. No. 44)

On June 30, 2022, defense counsel notified plaintiff of a second attempt to take his deposition, this time in-person, at the facility where he was housed. (Dkt. No. 46)

---

[2] Plaintiff also asserted claims for interference with mail, denial of telephone calls, deliberate indifference to his medical needs, and sexual abuse. (Dkt. Nos. 1, 21) On March 25, 2021, the Court dismissed, with prejudice, Romano's claims for interference with mail, denial of phone calls, and deliberate indifference to his medical needs for failure to state a claim. (Dkt. No. 23) The sexual abuse claim was dismissed at Romano's request. (Dkt. No. 23, pg. 2)

[3] Plaintiff has also named former Five Points Sergeant Tony A. Bower as a defendant in his excessive force claim. (Dkt. Nos. 21, 23) The Court allowed the excessive force claim against Bower to proceed to service. (Dkt. No. 23, pg. 12) At the Court's request, the Attorney General's Office provided a last known address for Bower. (Dkt. No. 31) The Court then directed personal service of the summons and amended complaint on Bower by the United States Marshals Service, at the address provided by the Attorney General's Office, by September 14, 2021. (*Id.*) The summons was returned unexecuted, on September 14, 2021, with an indication that Bower moved from that address two years prior. (Dkt. No. 32) It does not appear, from the record, that plaintiff has made any further attempts at service. Thus, Bower has not been served and has not appeared in this lawsuit.

When defense counsel arrived at Attica Correctional Facility on July 6, 2022, plaintiff refused to come out of his cell and participate in the deposition.[4] (Dkt. No. 65-2, ¶ 10; Exh. B) On or about July 12, 2022, the Court received correspondence from defense counsel, advising of plaintiff's refusal to participate in his scheduled deposition. (Dkt. No. 51) In response, the Court issued a text order directing plaintiff to appear for and submit to a deposition at a date and time chosen by defense counsel, on or before November 30, 2022. (*Id.*) Plaintiff was warned that "fail[ure] to appear for and fully participate in his deposition as noticed" may result in him being "held in contempt of Court and/or the action being dismissed with prejudice." (*Id.*)

On November 3, 2022, plaintiff filed a motion to appoint counsel. (Dkt. No. 52) Plaintiff also filed a letter with the Court indicating that he suffers from severe mental illness; that he cannot participate in a deposition while "on serious psych[iatric] meds"; and that he needs counsel in order to attend a deposition and/or conduct discovery. (Dkt. No. 48) On November 8, 2022, the Court denied, without prejudice, plaintiff's motion for appointment of counsel. (Dkt. No. 53) Therein, the Court noted the early stage of the litigation and plaintiff's ongoing reluctance to participate in a deposition. (*Id.*) The Court indicated that "if and when plaintiff cooperates with the taking of his deposition, the appointment of counsel may be revisited at the conclusion of discovery, when more facts are known about the merits of plaintiff's case and plaintiff has demonstrated compliance with this Court's recent order." (*Id.*) The Court also noted that while plaintiff claimed he

---

[4] In support of the motion to dismiss, defense counsel submitted a transcript from the July 6, 2022 proceeding. (Dkt. No. 65-3, pg. 9) The transcript reflects that when defense counsel arrived at Attica, plaintiff refused to come out of his cell. (*Id.*) Defense counsel then requested that a lieutenant inform plaintiff that if he did not participate in the deposition, defendant would seek judicial intervention, including a request that the lawsuit be dismissed. (*Id.*) However, plaintiff still refused to leave his cell and attend the deposition. (*Id.*)

needed counsel because of his mental health issues, this was not, in itself, a valid reason for the assignment of *pro bono* counsel. (*Id.*)

On November 2, 2022, defense counsel issued another notice to take plaintiff's deposition through video conferencing. (Dkt. No. 54) When defense counsel attempted to proceed with the deposition on the scheduled date of November 21, 2022, she was advised that plaintiff was not cooperating and refused to come out of his cell. (Dkt. No. 65-2, ¶ 15; Exh. D) On November 11, 2022, the Court received a letter from plaintiff indicating that he missed the bus scheduled to take him to his deposition and that it was not his intention to refuse to appear. (Dkt. No 55)

On December 16, 2022, the Court issued a text order indicating that it would allow plaintiff "one more opportunity to appear for his deposition." (Dkt. No. 56) The Court warned plaintiff that failure to appear at the next scheduled deposition would "prevent [him] from moving forward with the lawsuit." (*Id.*) The Court further warned plaintiff that should he fail to appear for the next scheduled deposition "he may be held in contempt of Court and/or this action may be dismissed." (*Id.*)

Defense counsel again issued a notice of deposition, indicating that the deposition would be held one day during the week of February 27, 2023, through video conferencing, at the facility where plaintiff was housed.[5] (Dkt. No. 57) On February 28, 2023, the date of plaintiff's scheduled deposition, defense counsel received notification that plaintiff was

---

[5] Upon receiving the notice, plaintiff filed a letter expressing concern that his deposition in this case and an evidentiary hearing in one of his other civil rights lawsuits, *Romano v. Lisson*, 16-CV-81, were both scheduled for February 27, 2023. (Dkt. No. 59) Defense counsel in the instant case sent plaintiff two letters clarifying that his deposition in this matter was scheduled for February 28, 2023, and therefore no scheduling conflict existed. (Dkt. No. 65-2, ¶ 20) Further, the Court issued a text order indicating that the evidentiary hearing in *Romano v. Lisson* would be rescheduled, and directing plaintiff to attend his deposition in this case as noticed. (Dkt. No. 60)

4

not at Attica because of an "emergency" and therefore the deposition could not go forward. (Dkt. No. 65-2, ¶ 21) According to defense counsel, medical documents indicate that plaintiff was returned to Attica later that same day. (*Id.*) On March 7, 2023, plaintiff filed a letter stating that he was unable to attend his deposition on February 28 because he was "rushed" to Wyoming County Community Hospital as the result of a serious medical condition. (Dkt. No. 63) Plaintiff's letter did not explain what medical condition he suffers from or what symptoms he was experiencing that day, nor did the letter indicate what treatment he received. (*Id.*)[6]

On April 3, 2023, defendants moved to dismiss this action based on plaintiff's failure to comply with his discovery obligations and the Court's order to do so. (Dkt. No. 65). The Court issued a scheduling notice which required a response to the motion by May 16, 2023. On April 12 and May 25, 2023, plaintiff filed letters offering various excuses as to why he has not appeared for any of his scheduled depositions. (Dkt. Nos. 66, 68) Plaintiff's reasons include that (1) he had been "set-up" by corrections officers at Attica who purposefully searched his cell on the day of a scheduled deposition, requiring him to be present for the search and preventing him from attending the deposition; (2) he does not get along with or "see eye-to-eye with" defense counsel; and (3) he suffers from serious medical problems as well as serious mental health issues. (*Id.*) Plaintiff again asks for the appointment of counsel and states that he will "do a deposition ASAP with a Judge and [his] attorney." (Dkt. No. 68)

---

[6] In a subsequent letter to the Court, plaintiff indicated that, on February 28, 2023, he received treatment at Wyoming County Community Hospital for high blood pressure as well as injuries to his stomach, back, and chest. (Dkt. No. 66) Plaintiff did not provide any documentation or records of treatment for that day, but stated that he could provide them. (*Id.*)

5

## **DISCUSSION**

Rule 41(b) of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." *See* Fed. R. Civ. P. 41(b). Upon considering defendant's motion and the factual record here, the Court finds that this case should be involuntarily dismissed for want of prosecution.

Failure to prosecute can "evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982). The Second Circuit has outlined several factors courts must consider before dismissing a lawsuit for failure to prosecute. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). These factors include: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less dramatic than dismissal." *Id.* at 535.

Further, the Federal Rules provide that an action may be dismissed if a party fails to comply with a court's discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A). "All litigants, including *pro ses*, have an obligation to comply with Court orders." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990). "[D]ismissals under Rule 37(b) and Rule 41(b) are guided largely by the same analysis." *Viruet v. City of New York*, 16-CV-8327, 2020 U.S. Dist. LEXIS 78395, at *15 (S.D.N.Y. May 1, 2020) (citations omitted). In evaluating a dismissal

under Rule 37, the Court should consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

Here, plaintiff has repeatedly refused to submit to an oral deposition in contravention of explicit court orders. On four separate occasions, specifically June 22, 2022, July 6, 2022, November 21, 2022, and February 28, 2023, plaintiff either failed to appear for his scheduled deposition or refused to leave his cell in order to participate in the deposition. Plaintiff's deposition was rescheduled on three separate occasions to accommodate his myriad of excuses as to why he could not attend. Plaintiff was twice ordered by the Court that, in order to continue to pursue his claim, he was required to appear for and fully participate in a deposition by defendant. However, plaintiff continues to disobey Court directives by evading his discovery obligations at every turn. Indeed, the Second Circuit has held that a plaintiff's repeated failure to appear for his or her deposition warrants dismissal. *See Manigaulte v. C.W. Post of Long Island Univ.*, 533 Fed. App'x 4, 6 (2d Cir. 2013) (summary order); *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994).

With regard to the duration of the noncompliance, it has been almost a year since the Court first ordered plaintiff to be deposed. During that time, plaintiff has made no effort to become compliant, despite multiple chances to appear and a subsequent order by the Court. Plaintiff's failure to cooperate with his deposition has delayed this litigation, as it cannot now move forward to summary judgment or trial stages. *See Watkins v.*

*Matarazzo*, 13-CV-2477, 2015 U.S. Dist. LEXIS 178636, at *25 (S.D.N.Y. Sept. 22, 2015) (factors weigh heavily in support of dismissal when "the delay [...] has functioned as a complete block to moving this litigation forward, despite the efforts of defendants and the Court to do so."). This period of seemingly deliberate obstinance and inaction supports dismissal of the case. *See Brown v. General Nutrition Cos.*, 356 Fed. Appx. 482, 486 (2d Cir. 2009) (a "four-month delay cannot be said to be of insignificant duration"); *Ruzsa v. Rubenstein & Sendy Attys. at Law*, 520 F.3d 176, 177 (2d. Cir. 2008) (dismissal for failure to prosecute affirmed where plaintiff's inaction caused a delay of over seven months); *Chira v. Lockhead Aircraft Corp.*, 634 F.2d 664 (2d Cir. 1980) (dismissal proper under Rule 41(b) when plaintiff failed to take any action to move his case to trial during a six-month period); *Peters-Turnbull v. Bd. Of Educ.*, 96 Civ. 4914, 1999 U.S. Dist. LEXIS 16079 (SDNY Oct. 18, 1999) (a delay of somewhere between five and ten months "falls comfortably within the time frames found sufficient in successful Rule 41(b) motions to dismiss.").

As to the second factor, plaintiff has been warned by this Court that his failure to comply may result in dismissal of his lawsuit. On November 2, 2022, the Court issued a text order compelling plaintiff to participate in a deposition as noticed and informing him that his failure to comply could result in dismissal of the case. Despite this warning, plaintiff still failed to attend his next scheduled deposition. By text order entered on December 16, 2022, plaintiff was told by the Court that he had one final chance to submit to a deposition, and that failure to appear and participate could result in dismissal. He again failed to appear. Thus, it cannot be said that plaintiff has not been adequately warned that failure to submit to a deposition would result in dismissal of his claims. *See*

*Lyell Theatre*, 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned that dismissal for failure to prosecute was possible); *Ruzsa*, 520 F.3d at 177-78 (dismissal of action for failure to prosecute affirmed where plaintiff was notified that "further delay will result in dismissal.").

The third factor requires the Court to consider whether plaintiff's inaction has resulted in prejudice to defendant. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where the delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theatre*, 682 F.2d at 43 (internal citations omitted). Here, plaintiff has created unreasonable delay by refusing to participate in four scheduled depositions and by failing to become compliant with Court orders in over a year. Therefore, prejudice may be presumed. Further, plaintiff's delay could result in actual prejudice to defendant. Without the benefit of plaintiff's deposition, defendant cannot adequately assess the merits of the lawsuit, file a dispositive motion, or otherwise defend against plaintiff's claims. Moreover, lapses in time compromise witnesses' availability and their ability to accurately recall the pertinent events. Delays also may affect the preservation of evidence.

The fourth factor requires the Court to balance calendar congestion and plaintiff's right to present his case. The Second Circuit cautions that "a court must not let its zeal for a tidy calendar overcome its duty to justice." *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968). However, plaintiff has not been denied his due process rights here. Both the delay and potential dismissal are of his own making. Plaintiff was afforded numerous chances to further his case by submitting to a deposition. He did not do so. Thus, plaintiff's own failure to litigate this matter cannot be construed as the denial of the

right to present his case. *See Dodson v. Runyon*, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making."). Accordingly, this factor also weighs in favor of dismissal.

Plaintiff attempts to justify his conduct by asserting that he suffers from mental illness and by requesting that he be appointed counsel. The Court has previously addressed plaintiff's requests for counsel, and in its discretion, has concluded that appointment of *pro bono* counsel is not justified at this time. (See Dkt. No. 53). It is noted that this case involves a single incident of excessive force and does not appear to raise complex legal or factual issues. Plaintiff is experienced in litigation, having filed and prosecuted at least 13 civil rights lawsuits under § 1983 since 2013 in this District alone. Indeed, plaintiff's last letter to the Court seems to indicate that he will submit to a deposition if and when he is appointed counsel. There is no constitutional right to counsel in civil cases, and plaintiff's preference for counsel does not excuse his obligation to comply with court orders and fulfill his discovery obligations. *See Garner v. New York State Parks & Rec.*, 18-CV-501, 2021 U.S. Dist. LEXIS 150454, at *12 (W.D.N.Y. Aug. 10, 2021) ("[S]pecial solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights.").

Nor do plaintiff's assertions of mental illness relieve his obligations to prosecute this matter. The Court has considered its responsibilities under Fed. R. Civ. P. 17(c) to appoint a *guardian ad litem* for an incompetent person not otherwise represented in an action. Such an appointment is not warranted here. Despite his stated history of mental

health problems, the Court is not aware of any proceeding in which plaintiff has been adjudicated incompetent. The Court acknowledges that plaintiff almost certainly suffers from some degree of mental illness, and plaintiff indicates that he is housed in a special unit for prisoners suffering from mental health conditions. However, the Court has not received any verifiable evidence indicating that plaintiff's mental illness is of the type that would render him legally incompetent.[7] *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003) ("Neither the language of Rule 17(c) nor the precedent of this court or other circuits imposes upon district judges an obligation to inquire *sua sponte* into a *pro se* plaintiff's mental competence, even when the judge observes behavior that may suggest mental incapacity.").

Plaintiff indicates that he failed to appear at his last scheduled deposition, on February 28, 2023, because he was rushed to the hospital after experiencing a medical emergency. Even if this is true, the Court is skeptical that plaintiff actually intended to participate in the deposition on its intended date. The Court further lacks confidence that, should plaintiff's deposition be rescheduled for a *fifth* time, plaintiff would actually appear and participate. First, plaintiff's last correspondence with the Court seems to condition his presence at a deposition on the appointment of counsel. Further, defendant has tried to take plaintiff's deposition on four separate occasions. Each time, plaintiff has either plainly

---

[7] The Court further notes that plaintiff is, or was recently, represented by counsel in two other cases currently pending in this District. *See Romano v. Lisson* (16-CV-81); *Romano v. Salotti* (17-CV-465). To the Court's knowledge, in neither of those cases has plaintiff's counsel raised competency concerns. Plaintiff was also appointed counsel in *Romano v. Ulrich* (13-CV-633). Recently, *pro bono* counsel in *Ulrich* moved to withdraw based on irreconcilable differences, including insulting behavior by Romano and Romano's refusal to consider counsel's legal advice. (13-CV-633, Dkt. No. 153-1) In the motion to withdraw, *pro bono* counsel indicated that based upon her experience with Romano over the past few years, it is her belief that Romano understands the matter well and is capable of proceeding *pro se* for the remainder of the lawsuit. (*Id.*)

refused to appear or has been purportedly too sick or unwell to participate. Moreover, plaintiff has demonstrated a similar pattern of excuses and noncompliance in other lawsuits he has filed in this District. For example, plaintiff was scheduled to appear in this Court, on January 19, 2023, to participate in an evidentiary in *Romano v. Lisson*, Case No. 16-CV-81. Plaintiff was transported to the Courthouse and, upon meeting with his Court-appointed attorney, stated that he was having medical issues and would be unable to participate in the hearing. *See* 16-CV-81, Dkt. No. 102. The Court was later informed that plaintiff was taken to receive medical attention. *Id.* The remainder of the hearing was rescheduled for April 19, 2023. *Id.* at Dkt. No. 105. On April 19, 2023, prior to the start of the hearing, the Court received notice from Attica that plaintiff refused transport to the Court. *Id.* Thus, the hearing was held in his absence. *Id. See also Romano v. Laskowski*, 18-CV-479, 2022 U.S. Dist. LEXIS 109890 (W.D.N.Y. June 21, 2022) (dismissing lawsuit for failure to prosecute and/or comply with court orders after plaintiff refused to participate in two depositions).

In light of plaintiff's history and the totality of circumstances presented here, it is unlikely that a lesser sanction would be effective. *See Lee v. Green*, 10-CV-221, 2015 U.S. Dist. LEXIS 131565, at *9-10 (W.D.N.Y. Sept. 29, 2015) (finding lesser sanctions than dismissal inappropriate where plaintiff has repeatedly ignored directives, filed to meet discovery obligations, and has shown no intention of complying with court orders or properly litigating case); *Smith v. Human Resources Admin.*, 91-CV-2295, 2000 U.S. Dist. LEXIS 5373 (S.D.N.Y. Mar. 27, 2000) (finding sanctions short of dismissal inappropriate where "court orders and direction have not prompted plaintiff to move her case forward"); *Alevizopoulos & Assoc. v. Comcast Int'l Holdings, Inc.*, 99-CV-9311, 2000 U.S. Dist.

LEXIS 16154 (S.D.N.Y. Nov. 8, 2000) (finding lesser sanction to be inappropriate where plaintiff repeatedly failed to abide by the court's orders and noting that "[a] court need not beg a party to comply with its orders").

Having found that dismissal is appropriate, the Court next considers whether the case should be dismissed with or without prejudice. "Dismissal with prejudice is a harsh remedy to be used only in extreme situations . . . , and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994). (citation omitted). It is clear to the Court that plaintiff is purposefully evading his discovery obligations and this Court's orders. Moreover, plaintiff's noncompliance has caused substantial delay and has resulted in essentially a standstill of the litigation. However, it is also apparent to the Court that plaintiff suffers from mental health issues. Thus, it is difficult for the Court to determine whether plaintiff's continued refusal to be deposed is truly willful, based on lack of interest in this case, or directly related to mental illness. Accordingly, the Court finds it appropriate to recommend dismissal of this case under Rule 41(b) without prejudice to renewal, if plaintiff is so motivated. *See Massey v. Liburd*, 18-CV-7113, 2021 U.S. Dist. LEXIS 66645 (S.D.N.Y. Apr. 5, 2021) (dismissing complaint without prejudice based on *pro se* plaintiff's contentions that his failure respond to court orders and failure to prosecute his case was related to his mental illness, substance abuse, and temporary homelessness); *Brandon O. v. Woodlick*, 13-CV-4116, 2014 U.S. Dist. LEXIS 159091 (E.D.N.Y. Nov. 12, 2014) (dismissing case without prejudice under Rule 41(b) where there was a possibility that plaintiff's asserted mental illness caused plaintiff's failure to remain in contact with his counsel and failure to appear for his deposition).

## **CONCLUSION**

For the foregoing reasons, the Court recommends that defendant Robert Brown's motion be granted and that the amended complaint be dismissed, without prejudice, for failure to prosecute.[8]

Should this Report and Recommendation be adopted by the District Court, and should plaintiff file another complaint, plaintiff is advised that any further failures to prosecute may result in final dismissal. Plaintiff is further advised that a Court in this District has already determined that he has garnered "three strikes" under 28 U.S.C. § 1915(g) for civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim. See Romano v. Mobley, et al. (W.D.N.Y, 18-CV-1081-EAW; Dkt. No. 4). Accordingly, plaintiff is warned that, in the event he re-files this action, any future motions seeking *in forma pauperis* status will be denied barring imminent danger of serious physical injury.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

---

[8] The only other remaining named defendant in this case is Bower, who, as noted previously, has not been served and has not appeared in the lawsuit. In recognition of plaintiff's *pro se* status, the Court previously attempted to facilitate the service of Bower but was unsuccessful. Further, it is plaintiff's responsibility to provide a valid address at which defendant can be served. See Gustaff v. M.T. Ultimate Healthcare, 06 CV 5496, 2007 U.S. Dist. LEXIS 52772, at *7 (E.D.N.Y. June 21, 2007) ("The United States Marshals Service cannot investigate [the] defendant's whereabouts, nor can the Court."). Plaintiff has not done so here. The time for service has long passed. Moreover, plaintiff's record of noncompliance in this case, described in detail herein, demonstrates that he has little interest in moving the litigation forward as to any defendant, complying with Court directives, or fulfilling his obligations as a litigant in federal court. Thus, the Court finds that the dismissal for failure to prosecute should apply equally to plaintiff's claims against defendant Bower, and that the entire amended complaint should be dismissed without prejudice. See Chamber v. NASCO, Inc., 501 U.S. 32, 49 (1991) ("[A] federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute[.]").

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:  November 28, 2023
Buffalo, New York

_____
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge

15